IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

---

NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PA,

     Plaintiff,

vs.

DEAN BALDWIN PAINTING, INC.,
JOHN D. SALAS, JIM CLARK,
OASIS OUTSOURCING, INC.,
RICARDO RUBIO, ZURICH
AMERICAN INSURANCE
COMPANY, QANTAS AIRWAYS,
LIMITED, AND JET CLIPPER
JOHNNY, LLC,

     Defendants.

No. 05cv424 PK/DJS

---

MEMORANDUM OPINION AND ORDER

---

This matter comes on for consideration of Plaintiff National Union's

Amended Motion for Summary Judgment filed December 5, 2005 (Doc. 73), and

the Motion for Continuance by Dean Baldwin Painting, Inc., John D. Salas, Jim

Clark, Quantas Airways, Ltd., and Jet Clipper Johnny, LLC, filed December 30,

2005 (Doc. 79).  Upon consideration thereof,

    (1)  In this declaratory judgment action, 28 U.S.C. § 2201, Plaintiff

National Union Fire Insurance Co. of Pittsburgh, Pa. ("National Union") seeks a

declaration that it does not owe a duty to defend or indemnify its insured,

Defendant Dean Baldwin Painting, Inc. ("Dean Baldwin") or Defendants Salas,

Clark, Qantas, or Jet Clipper Johnny, LLC, under a commercial general liability

aviation policy ("CGL policy") issued to Dean Baldwin.  Doc. 1 at 4, 8.  The

primary lawsuit brought by Ricardo Rubio in state court seeks to recover against

various Defendants for injuries sustained when a Boeing 707 aircraft ("jet"),

while being towed, ran over Mr. Rubio's legs.  Rubio v. Dean Baldwin Painting,

Inc., No. CV-2004-804 (Chavez County, N.M. 5th Jud. D. Ct.) ("state court

lawsuit"); see Doc. 74, Ex. A at 3.  Dean Baldwin, Mr. Salas, Mr. Clark and Jet

Clipper Johnny tendered the defense of the state court lawsuit to National Union.

National Union denied coverage as to all, but is defending its insured, Dean

Baldwin, under a reservation of rights.  In this summary judgment motion,

National Union maintains that the policy either does not cover or excludes

coverage for all of the Defendants.

(2) Standards.  The parties' submissions have been evaluated in accordance

with Fed. R. Civ. P. 56(c), and the standards set forth in Celotex Corp. v. Catrett,

477 U.S. 317 (1986) and Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

Whether an insurer has a duty to defend is generally determined with reference to

allegations contained in the complaint.  State Farm Fire & Cas. Co. v. Moon, 31

F.3d 979, 985 (10th Cir. 1994); Bernalillo County Deputy Sheriffs Ass'n v.

Bernalillo, 845 P.2d 789, 791 (N.M. 1992).  But because pleadings are malleable,

the duty to defend arises at any time where facts brought to the insurer's attention (or learned during a reasonable investigation) suggest coverage. <u>G & G Servs., Inc. v. Agora Syndicate, Inc.</u>, 993 P.2d 751, 759 (N.M. Ct. App. 1999). The inquiry is not whether the plaintiff in the underlying action can prove an action for damages against the insured, but rather whether the allegations in the complaint and the facts reasonably known to the insurer bring the case within policy coverage. <u>Am. Employers' Ins. Co. v. Continental Caves. Co.</u>, 512 P.2d 674, 676 (N.M. 1973).

Insurance contracts are construed as a whole and, in the absence of ambiguity, in accordance with the intentions of the contracting parties. <u>Ponder v. State Farm Mut. Ins. Auto Ins. Co.</u>, 12 P.3d 960, 964 (N.M. 2000). Where a provision is ambiguous, the court construes against the insurer, giving effect to the reasonable expectations of the insured. <u>Rummel v. Lexington Ins. Co.</u>, 945 P.2d 970, 977 (N.M. 1997). Exclusions are construed narrowly and in accordance with the reasonable expectations of the insured. <u>Knowles v. USAA</u>, 832 P.2d 394, 396 (N.M. 1992). They must be clearly expressed and the insurer has the burden of showing their applicability. <u>Rummel</u>, 945 P.2d at 977. Clear exclusions that apply given the facts are enforceable absent a conflict with statute. <u>Safeco Ins. Co. v. McKenna</u>, 565 P.2d 1033, 1035 (1977).

Defendants Dean Baldwin, Mr. Salas, Mr. Clark, Qantas, and Jet Clipper Johnny ("Dean Baldwin Defendants") maintain that National Union should be

denied summary judgment because of non-compliance with D.N.M. LR-Civ. 56.1(b), which requires a movant to submit a numbered, concise statement of material facts as to which the movant contends no genuine issue exists. Additionally, the rule requires that reference must be made to the record upon which the movant relies.  Id.  Here, National Union set out the allegations contained in the underlying complaint in a section of its memorandum dealing with the procedural posture of the case, and then in separately numbered paragraphs set out the pertinent policy provisions (and provisions of a painting agreement between Dean Baldwin and Quantas) that it relied upon.  The Dean Baldwin Defendants by way of example suggest that National Union's failure to state as a material fact that Mr. Rubio is an employee of Dean Baldwin means that the employee exclusion in the policy is an insufficient ground as a matter of law on which to grant summary judgment.  Doc. 84 at 2.

This technical argument lacks merit.  National Union set out the portions of the underlying complaint, and the various provisions it relies upon in seeking summary judgment.  It provided citations to the record.  Thus, it plainly identified the portion of the underlying complaint alleging that Mr. Rubio is an employee of Dean Baldwin.  Given the legal principles involved in determining a duty to defend, National Union's summary judgment memorandum is sufficient and certainly put the Defendants on notice of the issues.

(3) <u>Policy Provisions.</u>  Dean Baldwin is the named insured.  R. Doc. 74, Ex. C (Declarations Page).  The insuring agreement provides in pertinent part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies resulting from your Aviation operations. We will have the right and the duty to defend any suit seeking those damages.
> . . . .
> (b) This insurance applies to bodily injury and property damage only if:
> (1) The bodily injury or property damage is caused by an occurrence that takes place in the coverage territory; and
> (2) The bodily injury or property damage occurs during the policy period.
>
> (c) Damages because of bodily injury include damages claimed by any person or organization for care, loss of services or death resulting at any time from the bodily injury.

<u>Id.</u> Part 1- Form CGL01, § I Coverage A, ¶ 1 at 1.   Employees are included as insureds "for acts within the scope of their employment" by the insured but "no employee is an insured for . . . [b]odily injury or personal injury to . . . a co-employee while in the course of his or her employment . . . ." <u>Id.</u> § II, ¶ (2)(a) & (a)(1) at 5..

The bodily injury or property damage must be "caused by an occurrence." <u>Id.</u> § I, Coverage A, ¶ (1)(b)(1) at 1.  An "occurrence" is defined in pertinent part as "an accident."  <u>Id.</u> § V, ¶ 14 at 10.  The policy does not define "accident."  The Dean Baldwin Defendants contend that the absence of the definition of the term "accident" renders the term "occurrence" undefined.  Doc. 84 at 3.  Given the New Mexico judicial construction of the term "accident," this argument is not

persuasive.  The policy contains several pertinent exclusions:

• **Intentional acts exclusion.**  For "Bodily injury or property damage expected or intended from the standpoint of the insured."  R. Doc. 74, Ex. C § I, Coverage A, ¶ (2)(a) at 1.

• **Workers' compensation exclusion.**  For "Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law."  Id. ¶ (2)(d) at 1.

• **Employee exclusion.**  For bodily injury to "[a]n employee of the insured arising out of and in the course of employment by the insured . . ."  Id. ¶ (2)(e)(1) at 1.  An exception provides that this exclusion "does not apply to liability assumed by the insured under any insured contract."  Id. ¶ (2)(e) at 1-2.

An **insured contract** includes "That part of any other contract or agreement pertaining to your Aviation operations (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for bodily injury or property damage to a third person or organization. Tort liability means the liability that would be imposed by law in the absence of any contract or agreement."  Id. § V, ¶ 10(a)(6) at 9.  An insured contract does not include "that part of any contract or agreement . . . [w]hich is agreed to orally by you and another party, unless the contract or

- 6 -

agreement is required by a governmental body for you to use an airport."
Id. ¶ 10(b)(7) at 9-10.

- **Contract exclusion.** For bodily injury or property damage "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." Id. § I, Coverage A, ¶ 2(b) at 1.  There are exceptions to the contract exclusion.  It does not apply "to liability for damages . . . [a]ssumed in a contract or agreement that is an insured contract, provided the bodily injury or property damage occurs subsequent to the execution of the contract or agreement." Id. ¶2(b)(1) at 1.  Additionally, the exclusion does not apply to liability or damages "the insured would have in the absence of the contract or agreement." Id. ¶ 2(b)(2) at 1.  The definitions pertaining to "insured contract" have been set out above.

The policy also provides medical payments coverage for medical expenses for bodily injury caused by an accident "on premises you own, lease or rent" or "[b]ecause of your Aviation operations" and "regardless of fault." Id. § 1, Coverage C, ¶¶ (1)(a)-(b) at 3-4.

- **Medical payments exclusion.** For bodily injury "(a) [t]o any insured, (b) [t]o a person hired to do work for or on behalf of any insured or tenant of any insured, (d) [t]o a person, whether or not an employee of any insured, if the benefits for the bodily injury are payable or must be paid under a

workers' compensation or disability benefits or similar law" or "(g) excluded under Coverage A [bodily injury and property damage]." Id. ¶ (2) at 4.

(4) Underlying Complaint.  The complaint in the underlying action indicates that it is brought pursuant to Delgado v. Phelps Dodge Chino, Inc., 34 P.3d 1148 (N.M. 2001), which rejected an actual-intent-to-injure test for determining when an employer loses immunity under Workers' Compensation. Doc. 74, Ex. A at 3.  Instead, the court fashioned the following test:

> [W]e hold that willfulness renders a worker's injury non-accidental, and therefore outside the scope of the [Workers' Compensation] Act, when: (1) the worker or employer engages in an intentional act or omission, without just cause or excuse, that is reasonably expected to result in the injury suffered by the worker; (2) the worker or employer expects the intentional act or omission to result in the injury, or has utterly disregarded the consequences; and (3) the intentional act or omission proximately causes the injury.

Delgado, 34 P.3d at 1156.  The first factor is objective, and the second subjective. Id.

The complaint contains six counts.  Count I alleges Dean Baldwin and Oasis Outsourcing, Inc. ("Oasis"), a joint venturer, through their agents and employees including Mr. Salas (Dean Baldwin's lead mechanic) and Mr. Clark (Dean Baldwin's general manager), intentionally or with willful indifference to Mr. Rubio's safety, transported the jet into a painting hangar.  According to the complaint, the tug used for that purpose was underpowered, lacked functional

- 8 -

brakes or an emergency brake, and its tires were bald.  No brakeman was in the jet's cockpit to act as a brakeman and the jet's brakes had been disengaged from the wheels.

Continuing with the allegations of the complaint, Mr. Rubio was directed to serve as a "chock walker" near the left main landing gear, in close proximity to the jet's wheels, and he was to place chocks under the wheels of the jet in order to stop it.  There was no audio signaling device, and industry-mandated ground towing standards were not followed.  Because the tug was underpowered, Baldwin employees were forced to zig-zag up an incline with the jet on its path to the hangar.  In the absence of a brake rider, Mr. Rubio was ordered to check or release the jet's brakes.  According to the complaint,

> After he did so, and as he signaled to his co-workers, the plane followed the path of the tug as it changed positions zigzagging up the incline on its approach to the paint hangar.  The wheels of the aircraft left main landing gear caught [Mr. Rubio's] feet pulling him down and crushing both his legs.

Doc. 74, Ex. A, ¶ 28 at 5-6.  Though the Defendants contest these allegations, they must be analyzed in deciding whether allegations within coverage have been made.

Turning to the first <u>Delgado</u> element, the complaint alleges that the identified acts and omissions were intentional and a reasonable person would expect injury to Mr. Rubio.  <u>Id.</u> ¶ 36 at 7-8.  For the second  <u>Delgado</u> element, the complaint alleges that Dean Baldwin utterly disregarded the consequences of its

actions, or alternatively was willfully indifferent to the likely consequences after consideration, and proceeded with the actions resulting in Mr. Rubio's injury.  Id. ¶ 37 at 8.  Finally, in accordance with the third Delgado element, Mr. Rubio alleged that the intentional or willfully indifferent actions of Dean Baldwin, Oasis, Mr. Salas and Mr. Clark in moving the aircraft were the direct and proximate cause of his injuries.  Id. ¶ 38 at 8.

The second count of the complaint alleges that Oasis is jointly and severally liable based upon negligent operation of the joint venture between Oasis and Dean Baldwin.  Id. ¶ 41 at 9.  The third count alleges that Jet Clipper Johnny is negligent based on a failure to warn Dean Baldwin's painting crew that it would have no access to the jet's cabin for a brake rider, and for failing to provide access to the cabin.  Id. ¶¶ 46-48 at 10.  The fourth count alleges that Zurich North American is Dean Baldwin's workers' compensation carrier, that it has provided workers' compensation benefits to Mr. Rubio, and that it is liable for the amount of any judgment up to policy limits based upon any Delgado claims.  Id. ¶¶ 50-52 at 11.  The sixth count[1] alleges that Quantas negligently hired or contracted with Dean Baldwin to paint the jet.  Id. ¶ 56-57 at 12.  Mr. Rubio seeks punitive damages in the seventh count based on allegations that the Defendants' acts and omissions were wanton and willful and done without regard to Mr. Rubio's rights and safety.  Id. ¶ 60 at 13.

---

[1]  A fifth count is not included in the complaint.

(5) <u>The Painting Agreement.</u>  Dean Baldwin and Qantas executed a painting

agreement four days after the incident.  Doc. 74, Ex. D at 7.  The Dean Baldwin

Defendants offer an affidavit of Carl Baldwin summarily stating that Qantas had

agreed to the terms contained therein on June 8, 2002, with services performed on

June 9, 2002.  Doc. 84, Ex. B, ¶ 9 at 2.  The painting agreement provided in

pertinent part:

> Dean Baldwin Painting, Inc. will defend and indemnify Qantas
> Airways Limited and Jett Clipper Johnny and their personnel from
> and against all damages suffered or incurred by any of those
> indemnified to the extent that those damages are suffered or incurred
> as a result, whether directly or indirectly, of:
>
> a.)  any breach of this Agreement by Dean Baldwin Painting, Inc; or
>
> b.)  any negligent, wilful, unlawful or reckless act or omission of
> Dean Baldwin Painting, Inc. or its officers, employees or agents in
> connection with this Agreement.

Doc. 74, Ex. D at 6.  The contract further provides:

> The pricing in this proposal is valid for sixty (60) days.  Dean
> Baldwin Painting, Inc. reserves the "Right of First Refusal" on
> hangar slotting until such time as this proposal is agreed to **and
> signed** by Qantas Airways thus becoming a binding contract.

<u>Id.</u> (emphasis added).

(6) <u>Validity of the Exclusionary Clauses.</u>  The Dean Baldwin Defendants

argue that the exclusionary clauses in the policy are repugnant to the insuring

clause and should not be enforced.  Doc. 84 at 7-11.  They compare the length of

the insuring clause (4-6 lines) to the length of the exclusions (85 lines).  They

contrast the grant of coverage for "damages for bodily injury" which "include damages for care, loss of services or death resulting at any time from the bodily injury," to the policy's (1) requirement that the bodily injury be caused by an occurrence, (2) intentional acts exclusion, (3) contract exclusion, (4) workers' compensation exclusion, (5) employee exclusion, (6) air traffic control operations exclusion, Doc. 74, Ex. C. § 1 Coverage A, ¶ 2(f) at 2, and (7) exclusion for damage arising out the ownership, maintenance, use or entrustment to others of any aircraft . . . owned or operated by or leased, rented or loaned to any insured. Id. ¶ 2(g) at 2.  They point out that Defendant Baldwin is in the business of repair and maintenance of aircraft and the exclusions defeat coverage.

The court is not persuaded that the exclusions that apply to this case are invalid.  The Dean Baldwin Defendants rely upon Knowles v. USAA, where the court declined to enforce an intentional acts exclusion because it was inconsistent with the grant of coverage for wrongful eviction contained in the umbrella policy. Knowles, 832 P.2d at 397-398.  In Knowles, the insurer argued that the policy would cover negligent wrongful eviction, but not wrongful eviction resulting from intentional acts.  Id. at 396.  The court construed the intentional acts exclusion as encompassing the intentional conduct (even if harm is not intended) alleged in the underlying complaint.  Id. at 398.  The court would not enforce the exclusion because (1) the policy granted coverage for wrongful eviction and other intentional torts, (2) the policy promised coverage for both risks insured under a

primary policy and for those occurrences that were not, (3) a personal umbrella policy suggests broad coverage, and (4) the reasonable expectations of the insured could only be given effect if the exclusion were not enforced. Id. at 398-99.  The case before the court differs in several material respects–the insuring clause does not cover intentional conduct; this is a CGL policy, not an umbrella; and a reasonable insured would not expect a CGL policy to cover carte blanche intentional acts, injury to employees, workers' compensation claims, or the assumption of tort liability except in narrowly defined circumstances. See State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 987 (10th Cir. 1994) (distinguishing Knowles as involving a "bait-and-switch tactic").  Moreover, New Mexico courts can and do enforce exclusions in insurance policies provided they are clear and do not violate public policy.  Bernalillo County Deputy Sheriffs Ass'n, 845 P.2d at 792.  This court holds that the exclusions relied upon in granting summary judgment in favor of National Union are not repugnant to the insuring clause.

In a related argument, the Dean Baldwin Defendants argue that National Union should be estopped from denying that an occurrence took place because the policy allows the insurer to investigate "any occurrence" Doc. 74, Ex. C, § 1 Coverage A, ¶ 1(a) at 1, and the insurer through its claims handler, AIG Aviation, Inc., received a "Notice of Occurrence/Claim" and thereafter conducted an investigation.  Doc. 84 at 9 (citing Doc. 74, Ex. B., ¶¶ 3, 4, & 7, at 1-2).

According to the Dean Baldwin Defendants, because the policy only allows investigation for an "occurrence," National Union has admitted there was an occurrence as defined in the policy.  The Dean Baldwin Defendants rely upon authority that "clauses in the policy must be construed as intended to be a complete and harmonious instrument designed to accomplish a reasonable end." Safeco Ins. Co. of Am. v. McKenna, 565 P.2d 1033, 1037 (N.M. 1977).  The contended-for construction would mean that any time an insurer receives notice of a claim and investigates it, it admits that an occurrence within the policy terms has taken place.  Such a construction ignores the insurer's right and duty to conduct a reasonable investigation of the claim so as to render a decision on coverage.  See N.M. Stat. Ann. § 59A-16-20(C) (requiring adoption and implementation of standards for prompt investigation and processing of insureds' claims) & (D) (requiring reasonably prompt coverage decision after proof of loss); G & G Servs., Inc., 993 P.2d at 757; N.M. UJI 13-1703.[2]   This argument is

---

[2]  N.M. UJI 13-1703 requires an insurer to conduct a reasonable investigation concerning its duty to defend:

> A liability insurance company has a duty to defend its insured against all claims which fall within the coverage of the insurance policy.  A liability insurance company must act reasonably under the circumstances to conduct a timely investigation and fair evaluation of its duty to defend.

> An insurance company acts in bad faith in refusing to defend a claim if the terms of the insurance policy do not provide a reasonable basis for the refusal.

(continued...)

without merit and National Union is not estopped from claiming no occurrence.

(7) Occurrence; Intentional Acts Exclusion–Dean Baldwin and Its Personnel.[3]  National Union maintains that the policy provides no coverage for intentional or willfully indifferent acts, and even if Mr. Rubio amended his complaint to assert negligence claims against Dean Baldwin, Mr. Salas and Mr. Clark, the policy would not provide coverage.  The complaint alleges that Dean Baldwin through its agents and employees acted intentionally or with willful indifference in causing Mr. Rubio's injuries.[4]  Doc. 74, Ex. A, ¶ 38 at 8.  National Union contends that the policy provides coverage only for an "occurrence" which is defined as an "accident."  An accident is "an unlooked for mishap, or an untoward event which is not expected or designed."  Vihstadt v. Travelers Ins. Co., 709 P.2d 187, 188 (N.M. 1985) (internal citations and quotation omitted).  It does not include that caused by willful design.  King v. Travelers Ins. Co., 505 P.2d 1226, 1229 (N.M. 1973).  In Delgado, the court applied the same definition

---

[2](...continued)

[3]  Defendants Oasis and Zurich American inform the court that Mr. Rubio has dismissed with prejudice Mr. Salas and Mr. Clark from the underlying lawsuit and that it is unnecessary to consider whether they were insureds under the policy.  Doc. 77 at 10 n.4.

[4]  The punitive damages count contends that Defendants' acts and omissions "were done willfully, and with willful indifference to the safety and well being of Plaintiff Rubio, with culpable mental state, wantonly and without regard to the rights, safety and well being of Plaintiff Rubio.  Doc. 74, Ex. A, ¶ 60 at 13.

in determining when an injury would be deemed non-accidental for purposes of lifting the exclusivity of workers' compensation as a remedy.  Delgado, 34 P.3d at 1153, 1156.

The policy provisions concerning an occurrence and intentional acts exclusion ought to be construed harmoniously.  Farmers Alliance Mut. Ins. Co. v. Rizzo, 1994 WL 249949, at * 2 (10th Cir. June 6, 1994) (unpublished).  The court recognizes that Mr. Rubio's complaint against Dean Baldwin, Mr. Salas and Mr. Clark sounds in Delgado, not negligence.  Mr. Rubio has an incentive not to press a negligence complaint against his employer or fellow servants–if he succeeds, he will be limited to the workers' compensation he is already receiving as remedy.[5] That remedy is exclusive.  See Morales v. Reynolds, 97 P.3d 612, 619 (N.M. Ct. App. 2004) (noting that Delgado did not change the principle that workers' compensation is the exclusive remedy for workers harmed by an employer's negligence).  As discussed below, Dean Baldwin is required to provide workers' compensation as a special employer, and this CGL policy would not cover obligations thereunder.

The Dean Baldwin Defendants have supplied affidavits from Dean Baldwin personnel disputing the version of events in Mr. Rubio's complaint and indicating that it was utilizing safe procedures and equipment, the crew was adequately

_____

[5]  The fact that Mr. Rubio is already receiving Workers' Compensation benefits does not bar him from pursuing a Delgado action.  Salazar v. Torres, 122 P.3d 1279, 1283-84 (N.M. Ct. App.), cert. granted, 124 P.3d 565 (N.M. 2005).

- 16 -

trained, and no one expected or intended injuries to any crew member.  Doc. 84, Exs. A,   (Salas aff.), B (Baldwin aff.), C (Clark aff.), D (Martinez aff.), E (Chavez aff.).  Several of the affidavits contend that the fault lies entirely with Mr. Rubio who allegedly disregarded safety precautions and training and entered the path of wheels or a landing gear while an aircraft is being moved.  Doc. 84, Exs. B, ¶ 13; D, ¶ 10-11; E, ¶¶ 7-11.

It appears that <u>Delgado</u> requires something beyond mere negligence.  <u>See</u> <u>Delgado</u>, 34 P.3d at 1155-56 ("willfulness renders a worker's injury non-accidental" upon satisfaction of a three-element test); <u>Wells v. U.S. Foodservice, Inc.</u>, 95 Fed. Appx. 302, 304-05 (10th Cir. 2004) (unpublished); <u>Dominguez v. Perovich Properties, Inc.</u>, 111 P.3d 721, 724-25 (N.M. Ct. App. 2005); <u>Morales</u>, 97 P.3d at 614-19;[6] <u>Cordova v. Peavey Co.</u>, 273 F. Supp. 2d 1213, 1219-1220

_____

[6]  In explaining the need for pleading and proof mechanisms needed to deal with growing numbers of <u>Delgado</u> claims, the New Mexico Court of Appeals has stated that the certainty of injury and egregious employer conduct is what separates a <u>Delgado</u> claim from usual negligence.

[The New Mexico] Supreme Court's decision in <u>Delgado</u> stems from this egregious employer conduct: a combination of deadly conditions, profit-motivated disregard for easily implemented safety measures, complete lack of worker training or preparation, and outright denial of assistance to a worker in a terrifying situation.  The Court's concern was that employers could send workers into certain injury or death, but then defend themselves by saying they were motivated by profit rather than by a desire to injure the worker. The present cases, the first to reach us from what appears to be a growing pool of <u>Delgado</u> claims, highlight the need to determine whether an accident meets the requirements of <u>Delgado</u> as a matter of law.  That

(continued...)

(D.N.M. 2003).  At the same time, a mere intentional act as required by the first and third elements of Delgado does not make an intentional tort.  See Restatement (Second) of Torts, § 8A, cmt. *b*; see also Garcia v. Gordon, 98 P.3d 1044, 1046 (N.M. Ct. App. 2004).  The second element of Delgado concerning an actor's subjective intent may be satisfied merely by a showing that the employer never considered the consequences of his intentional act.  Delgado, 34 P.3d at 1156.  It is axiomatic that an intentional acts exclusion requires intentional conduct; in New Mexico this requires a showing that the insured intended or expected the same general type of harm as was alleged in the underlying complaint.  Knowles, 832 P.2d at 396; see also Computer Corner v. Fireman's Fund Ins. Co., 46 P.3d 1264, 1267-68 (N.M. Ct. App. 2002) (holding that an intentional acts exclusion must be applied with reference to the insured's state of mind, not necessarily that of its employees, and that no evidence suggested that the employer intended the injury, rather, a series of mistakes and lack of information was responsible).  Given the complaint and the underlying facts, the court declines to grant summary judgment on this basis.

Although various Defendants have moved for a continuance to conduct discovery on the Delgado elements and have provided an affidavit suggesting that

---

[6](...continued)
determination must bear in mind the type of unconscionable conduct that Delgado sought to deter.

Morales, 97 P.3d at 615-616.

additional discovery will show that the actions and omissions of Dean Baldwin were in fact **not** intentional, expected or intended from the standpoint of the insured, such would seem to be unnecessary in light of the court's disposition on this point.  In any event, the court is not persuaded that a continuance is warranted.[7]  Although the amount of time to conduct discovery in this case has been limited, nowhere does the affidavit indicate what steps have been taken to obtain the facts not already presented by the Dean Baldwin Defendants in their affidavits in response to National Union's summary judgment motion, particularly given that the underlying state court action has now been pending for over a year. See Committee for the First Amendment v. Campbell, 962 F.2d 1517, 1522 (10th Cir. 1992).  Moreover, it is unclear how such facts would be material given the policy provisions and exclusions.

(8) Workers' Compensation Exclusion.  The workers' compensation exclusion in this policy bars recovery for "[a]ny obligation of the insured under a workers' compensation . . . law . . . ."  Nothing in Delgado suggests that Dean Baldwin would be relieved of its obligation under workers' compensation were it

---

[7]  The motion also requests additional discovery on the effective date of the painting contract between Dean Baldwin and Qantas, the nature of that contract, and the nature of Mr. Rubio's employment.  The accompanying affidavit does not address these matters; statements of counsel will not suffice.  See Committee for the First Amendment v. Campbell, 962 F.2d 1517, 1522 (10th Cir. 1992).  Also lacking is a specific showing of the proof Defendants hope to obtain, what steps have been taken to obtain it thus far, and how it will allow them to avoid summary judgment.

also to lose the protection of the exclusivity provision in the underlying action.

Although Dean Baldwin asserts that the workers' compensation being paid to Mr.

Rubio is not its obligation, Doc. 84 at 3, as a special employer, it was responsible

for providing workers' compensation, and it did so through its agreement

requiring Oasis to provide such insurance.  See Rivera v. Sagebrush Sales, Inc.,

884 P.2d 832, 836 (N.M. Ct. App. 1994).  Dean Baldwin's current position is

somewhat at odds with its offer to paint the jet which required it to maintain

worker's compensation to cover it "for any claim against it by any person

employed by Dean Baldwin Painting Inc. who provides services."  Doc. 74, Ex. D

at 5.  Any damages recovered in a successful Delgado action would be offset by

worker's compensation benefits to preclude double recovery.  Salazar, 122 P.3d at

1287.  So the worker's compensation exclusion would certainly limit coverage,

but it is not a sufficient basis in and of itself to defeat a duty to defend.

(9)   Employee Exclusion & Contract Exclusion.  Assuming that the event

in this case could be deemed an accident and an occurrence under the policy and

the intentional acts exclusion does not apply, the policy contains an employee

exclusion.  National Union correctly points out that this is a CGL policy, such

policies generally insure against risks to the public, as opposed to employees.

Truck Ins. Exch. v. Gagnon, 33 P.3d 901, 904 (N.M. Ct. App. 2001).  Here, the

policy excludes bodily injury to "[a]n employee of the insured arising out of and

in the course of employment by the insured . . . ."  Doc. 74, Ex. C., § I, Coverage

A, ¶ 2(e)(1) at 1.  An exception provides that this exclusion "does not apply to liability assumed by the insured under any insured contract."  Id. ¶ 2(e).

The underlying complaint alleges that Mr. Rubio was employed by Baldwin as a mechanical assistant.  Doc. 74, Ex. A, ¶ 8 at 3; see also Doc. 1, Ex. A., second ¶ 5, at 2; Doc. 77, Ex. 1, ¶ 5, at 2 (Answer of Mr. Salas and Mr. Clark admitting the allegation); Doc. 77, Ex. 2,  ¶ 8, at 2 (Answer of Dean Baldwin and Jet Clipper Johnny admitting the allegation).  The complaint describes how those injuries arose in the course and scope of that employment.  Doc. 74, Ex. A, ¶¶ 24-28 at 5.  National Union maintains that Dean Baldwin did not enter into an insured contract that would come within the insured contract exception to the employee exclusion.  As part of its summary judgment presentation, National Union has provided the painting agreement.  That agreement does not assume tort liability of Quantas or Jet Clipper Johnny; instead, the agreement provides that Dean Baldwin would indemnify these two parties for vicarious liability based upon "any negligent, willful, unlawful or reckless act or omission of Dean Baldwin Painting."  Doc. 74, Ex. D at 6.

In the alternative, even if the painting agreement were an insured contract within the meaning of the policy terms and the employee exclusion did not apply, the contract exclusion would bar coverage.  The exception to the contract exclusion would provide coverage for damages assumed in an insured contract, but only if the bodily injury or property damage occurs subsequent to the

execution of the contract or agreement.  Here, the painting agreement was

executed June 13, 2002–the incident occurred on June 9, 2002.  Doc. 74, Ex. 2 at

7.

    **A.  The Term "Employee.**  In response to National Union's reliance on the

employee exclusion, the Dean Baldwin Defendants argue that because the term

"employee" is undefined by the policy, there is a factual dispute as to the term's

use and whether it should be construed against the insurer.  Doc. 84, ¶ 12 at 5.

Defendants Oasis and Zurich American agree that there is a genuine issue of

material fact here.  The Defendants point out that by virtue of an outsourcing

agreement, Oasis employed Mr. Rubio as an at-will employee and leased him

back to Dean Baldwin.  Doc. 84, ¶ 11 at 5; Doc. 77, ¶¶ 14-15 at 3; Doc. 78, Ex. 2.

Defendants, relying upon the Service Agreement between Dean Baldwin and

Oasis, suggest that Oasis retained a right of control over such employees, and for

workers' compensation purposes, retained a right of direction and control over the

management of safety, risks, and hazard control involving leased employees, as

required by state and federal law.  Doc. 77 at 3 (citing Doc. 78, Ex. 1 at II(C) &

III(B)); Doc. 84 at 19.  The Dean Baldwin Defendants state that Dean Baldwin

personnel were employees of Oasis for purposes of workers' compensation,

payroll and benefits.  Doc. 84 at 19.  Defendants Oasis and Zurich acknowledge,

as they must, that Mr. Rubio was an employee for some purposes including the

work he did for Dean Baldwin.[8]  In fact, the Service Agreement provides that

Dean Baldwin had the power to accept or cancel any assignment of any leased

employee, had sole and exclusive control over the day-to-day job duties of any

leased employee, and Oasis had no control over the job site where any leased

employee performed services.[9]

---

[8]  The Dean Baldwin personnel contend they were employed by Oasis Outsourcing, Inc. on June 9, 2002, but worked for Dean Baldwin at its Roswell facility.  Thus, John Salas worked at the Dean Baldwin facility for four years with the title of Aviation Maintenance Supervisor.  Doc. 84, Ex. A, ¶ 4 at 1.  Carl Baldwin is the Vice-President of Operations hired to perform services.  Id., Ex. B at  ¶ 2 at 1.  Jim Clark had worked at the Roswell facility for five years and on the date of the incident had the title of Chief Inspector.  Id. Ex. C ¶ 2 at 1.  Estrella Martinez performed services for Dean Baldwin and has worked as an Aviation Maintenance Supervisor for two and one-half years.  Id. Ex. D, ¶ 2 at 1.  Finally, Refugio I. Chavez performed services for Dean Baldwin under the title of Safety/Loss Control Director.  Id. Ex. E, ¶ 2 at 1.

[9]  The Service Agreement makes it clear that Dean Baldwin retained sole and exclusive control over the job duties of Mr. Rubio.

II.  SERVICES
. . . .
C.  OASIS shall have sufficient authority so as to maintain a right of direction and control over leased employees assigned to Client's location, and shall retain authority to hire, terminate, discipline and reassign leased employees.  Client shall, however, retain such sufficient direction and control over the leased employees as is necessary to conduct Client's business and without which Client would be unable to conduct its business, discharge any fiduciary responsibility it may have, or comply with any applicable licensure, regulatory, or statutory requirement of Client.  Such authority maintained by Client shall include the right to accept or cancel the assignment of any leased employee.  Client shall have the sole and exclusive control over the day-to-day job duties of all leased employees and OASIS shall have no responsibilities with regard to

(continued...)

Oasis and Zurich American maintain, however, that the policy does not define

employee, and contend that the term is ambiguous where the employer is not

_____

[9](...continued)
the leased employees performance of such day-to-day job duties.
Furthermore, OASIS shall have no control over the job site at which,
or from which, leased employees perform their services.  Control
over the day-to-day job duties of the leased employees and over the
job site at which, or from which, leased employees perform their
services is solely and exclusively assigned to Client.

. . . .

III.  WORKERS' COMPENSATION

A.  OASIS shall secure workers' compensation coverage in such
amounts as required by applicable law and shall be responsible for
the management of workers' compensation claims, claim filings and
related procedures for its leased employees for services which they
perform as leased employees.
. . . .

B.  While OASIS shall retain a right of direction and control over the
management of safety, risk and hazard control involving leased
employees performing work at Client work sites, as may be required
by applicable state and federal laws, compliance with all applicable
laws related to such matters is a responsibility of Client.  Client
acknowledges that it is responsible to maintain a safe working
environment; provide proper training in compliance with state and
federal OSHA standards and establish and maintain such safety
programs, safety policies, and safety committees as required by law
or by OASIS.
. . . .
X.  CLIENT OBLIGATIONS AND RIGHTS

A.  Client has the right to accept or cancel the assignment of any leased
employee.
. . . .

Doc. 78, Ex. 1 at 1-2, 6.

- 24 -

exclusive.  Doc. 77 at 18.  They contend that Dean Baldwin's reasonable expectations as the insured would be that the policy "would only exclude from potential coverage claims for on the job injuries from employees who are fully and completely Dean Baldwin's employees, for all purposes."  Id.  While agreeing that the employee exclusion does not apply because it is ambiguous, the Dean Baldwin Defendants argue that because Oasis was the employer for workers' compensation purposes, it could not have been Mr. Rubio's employer.  Doc. 84 at 20.

   This appears to be an effort to create ambiguity where none exists.  Turning first to the workers' compensation context, though Oasis was the direct employer, Dean Baldwin was the special employer and liable for worker's compensation.  See Rivera, 884 P.2d at 836 (holding that special employer benefits from the exclusivity of workers' compensation).  Thus, the assertion that Dean Baldwin had no workers' compensation responsibilities, Doc. 84 at 20, is absolutely incorrect on this record.  A special employer is responsible for workers' compensation when (1) the employee has made an express or implied contract with the special employer, (2) the work is that of the special employer, and (3) the special employer has the right to control the details of the work.  Id. at 834-35.  The special employer may contract with another firm to fulfill its workers' compensation responsibilities and will be entitled to the benefit of the exclusivity provision.  Id. at 836.  That is exactly what occurred here.  Oasis was required to

- 25 -

secure worker's compensation coverage for the employees it leased to Dean
Baldwin.  Doc. 78, Ex. 1, § III, ¶ A.

Applying the test for a special employer, no evidence suggests that Mr.
Rubio did not consent to his assignment with Dean Baldwin.[10]  See Rivera, 884
P.2d at 836.  Plainly, the work was being done for Dean Baldwin and Dean
Baldwin had the right to control the details of the work.  Under these
circumstances, Mr. Rubio would be barred from asserting a negligence claim
against Dean Baldwin based on the exclusivity doctrine.  Id. at 837.

Of course, the employee exclusion is not written with express reference to
workers' compensation and it applies regardless of "[w]hether the insured may be
liable as an employer."  Doc. 74, Ex. C.. § 1, Coverage A, ¶ 2(e).  It provides that
the insurance does not apply to bodily injury to "[a]n employee of the insured
arising out of and in the course of employment by the insured . . ."  Id.
¶ (2)(e)(1).  Essentially, Defendants must argue that because the term "employee"
is undefined, it is ambiguous as to whether a leased employee would be included.
The court disagrees, even though it recognizes that some CGL policies may define
the term as including a leased employee.  See, e.g., Farmer's Union Mut. Ins. Co.

---

[10]  National Union maintains that Defendants have offered no admissible
evidence disputing Mr. Rubio's allegation in the underlying complaint that he was
a Dean Baldwin employee.  Doc. 81 at 9-10.  National Union also points out that
even if Mr. Rubio were deemed an Oasis employee, the employee exclusion
would still be applicable given Mr. Rubio's allegations in the complaint that
Oasis and Dean Baldwin were joint venturers.  Doc. 81 at 10.  The court agrees.

v. Horton, 67 P.3d 285, 288-89 (Mont. 2003). Merely because a term is undefined does not make it ambiguous. Vihstadt, 709 P.2d at 188. The term "employee" should be given its natural and ordinary meaning. Horton, 67 P.3d at 288-89; Estate of Galloway v. Guaranty Income Life Ins. Co., 725 P.2d 827, 828 (N.M. 1986). A dictionary definition of an employee is "one employed by another usually for wages or salary and in a position below the executive level." Webster's New Collegiate Dictionary at 408 (1991). Plainly, by using an outsourcing firm to handle certain human resource functions such as payroll and workers' compensation coverage, Dean Baldwin did not cease to become an employer, nor did Mr. Rubio cease being Dean Baldwin's employee. As discussed above, Dean Baldwin compensated Mr. Rubio (albeit through Oasis), was responsible for ensuring that worker's compensation coverage existed, and controlled the details of his day-to-day work. The employee exclusion applies. See Assicurazioni Generali SpA v. Pipe Line Valve Specialties Co. Inc., 935 F. Supp. 879, 883-887 (S.D. Tex. 1996) (under Texas law, upholding applicability of employee exclusion in similar circumstances).

Moreover, the reasonable expectations of the insured (Dean Baldwin) would not include an expectation that its CGL policy would cover employees' on-the-job injuries. National Union points out that Dean Baldwin, as the holder of a repair station certificate, is required to have adequate personnel to perform, supervise, and inspect the work. See 14 C.F.R. § 145.151(b); Doc. 84, Ex. B, ¶ 3

at 1 (Dean Baldwin is a licensed repair station).  The agreement between Dean Baldwin and Oasis requires the provision of worker's compensation insurance, and it seems most unlikely that Dean Baldwin expected on-the-job injuries to be covered by a liability policy when it incurred the expense (albeit indirectly) of workers' compensation coverage.  "An employer obtains a liability policy to cover *its liability to the public* for negligence of its agents, servants and employees under the doctrine of respondeat superior."  Brown v. Ind. Ins. Co., __S.W.3d__ , 2005 WL 3500280, at * 9 (Ky. 2005) (emphasis in original and quoting with citations and internal quotations omitted Am. Family Mut. Ins. Co. v. Tickle, 99 S.W.3d 25, 28 (Mo. Ct. App. 2003)).  Ordinarily, worker's compensation would be the exclusive means of satisfying an employer's liability for injuries in the course and scope of employment.

> The intent of commercial general liability policies is to protect against the unpredictable and potentially unlimited liability that can result from accidents causing injury to other persons or their property.  A commercial general liability policy does not cover the insured's obligations under a workers' compensation policy or bodily injury to the insured's employees arising out of the employment. The primary purpose of an employee exclusion clause is to draw a sharp line between employees and members of the general public.

Id.  Although the court recognizes that the rationale behind an employee exclusion is that workers' compensation will shield the employer from liability, the applicability of the exclusion cannot turn on whether in fact workers' compensation does so.  Workers' compensation is not exclusive where the

employer does not obtain coverage or where the employer intends injury–these exceptions have been with us for quite some time, and no one would suggest that in such circumstances the employee exclusion would not operate.  See Brown, 2005 WL 3500280, at *10 (employer lacked workers' compensation coverage; court would not rewrite commercial general liability policy to provide coverage). The fact that the New Mexico Supreme Court created a narrow exception to the actual intent test for determining exclusivity in Delgado does not mean that the court can declare the employee exclusion ambiguous and rewrite it.  Moreover, this policy has both a workers' compensation and an employee exclusion provision suggesting that they are not one in the same.

**B.  Applicability of the Insured Contract Exception to the Employee Exclusion; Contract Exclusion.**  The employee exclusion "does not apply to liability assumed by the insured under any insured contract."  Doc. 74, Ex. C, § I, Coverage A, ¶ 2(e) at 2.  Likewise, the contract exclusion does not apply provided the bodily injury occur subsequent to the execution of an insured contract.  See Id. ¶ 2(b)(1) at 1 (contract exclusion does not apply to "to liability for damages . . . [a]ssumed in a contract or agreement that is an insured contract, provided the bodily injury or property damage occurs subsequent to the execution of the contract or agreement").

Given the evidence of when the painting agreement was executed, the Dean Baldwin Defendants maintain that the definition of insured contract does not

require that the contract be in writing, signed by the parties or executed.  Doc. 84

at 21 (citing Doc. 74, Ex. C, § V, ¶ 10(a)).  At the same time, they suggest as a

material fact that "partial performance . . . . and the binding verbal agreement

between Qantas and Baldwin constituted an execution of the agreement."  Doc.

84, ¶ 25 at 7.

Be that as it may, the definitions section of the policy provides that an

insured contract will not include any part of an agreement "[w]hich is agreed to

orally by you and another party."  Doc. 74, Ex. C, § 5, ¶ 10(b)(7) at 10.  While

the Dean Baldwin Defendants point out that the painting agreement uses the term

"indemnification," the policy speaks of an insured contract as one "under which

you assume the tort liability of another party to pay for bodily injury or property

damage to a third person or organization."  Id. ¶ 10(a)(6) at 9.  In the painting

agreement, Dean Baldwin did not assume tort liability for the negligence of Jet

Clipper Johnny or Qantas to pay for the bodily injury of a third party (i.e. Mr.

Rubio).  Rather, Dean Baldwin agreed to assume liability for claims made against

Jet Clipper Johnny and Qantas based on Dean Baldwin's negligence.  An insured

contract requires the contracting party's assumption of another contracting party's

tort liability to a third party.  See VBF, Inc. v. Chubb Group of Ins. Cos., 263

F.3d 1226, 1232, 1233 n.3 (10th Cir. 2001).  Moreover, even were there an

insured contract, the contract exclusion would apply, because its exception for

insured contracts does not apply to bodily injury occurring before the insured

contract is signed.

In sum, the court is persuaded that National Union is entitled to summary judgment on the employee exclusion and it precludes coverage.

(10) <u>Co-Employee Exclusion.</u>  Because Mr. Salas and Mr. Clark have been dismissed from the underlying action with prejudice, it is unnecessary to address the applicability of the co-employee exclusion.  <u>See</u> Doc. 77 at 10 n.4.

(11) <u>Contract Exclusion.</u>  Jet Clipper Johnny and Qantas are not insureds under the policy.  As discussed above, the exception to the contract exclusion does not apply because the painting agreement is not an insured contract and the definitional section of "insured contract" does not allow for oral insured contracts.  Moreover, even were there an insured contract, the exception to the contract exclusion makes it clear that the bodily injury must occur subsequent to the execution of the insured contract.  That did not occur here.

Finally, the Dean Baldwin Defendants remind the court that National Union should not be relieved of a duty to defend where the underlying complaint is unclear and the facts tend to suggest coverage.  Despite the length of this disposition, summary judgment principles fully apply to this case and it is apparent that despite what may occur in the underlying lawsuit, there is no coverage under this policy, and hence, no duty to defend.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED and DECREED that:

1.  Plaintiff National Union's Amended Motion for Summary Judgment

filed December 5, 2005 (Doc. 73), is granted, and

2.  The Motion for Continuance by Dean Baldwin Painting, Inc., John D.

Salas, Jim Clark, Quantas Airways, Ltd., and Jet Clipper Johnny, LLC, filed

December 30, 2005 (Doc. 79), is denied.

DATED this <u>17th</u> day of February 2006, at Santa Fe, New Mexico.

_____
United States Circuit Judge
Sitting by Designation

Counsel:

William G. Burd, Tew Cardenas, LLP, Miami, Florida, and Pete V. Domenici, Jr,
Domenici Law Firm, Albuquerque, New Mexico, for Plaintiff National Union.

James K. Gilman, Gilman Law Firm, P.A., Albuquerque, New Mexico, for
Defendant Ricardo Rubio.

Paul E. Houston, Stuges, Houston & Sexton, P.C., Albuquerque, New Mexico, for
Defendants Oasis Outsourcing, Inc. and Zurich American Insurance Co.

Damon Richards, Bass, Fargason, Booth, St. Clair & Richards, LLP, Lubbock,
Texas, for Defendants Dean Baldwin Painting, Inc., John D. Salas, Jim Clark,
Qantas Airways, Ltd., and Jet Clipper Johnny, LLC.